NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In the matter of | : | Case No. 04-19443 |
| John Joseph Bolton | : | |
| Debtor | : | |
| John Joseph Bolton | : | Adversary No. 04-1735 |
| Plaintiff | : | |
| v. | | |
| | : | |
| United States Department of Education; New Jersey Higher Education Assistance Authority | : | **OPINION ON DISCHARGE OF STUDENT LOANS** |
| | : | |
| Defendants | : | |

APPEARANCES:  Neil I. Sternstein, Esq.
Five Aberdeen Place
Woodbury, New Jersey  08096
Counsel for the Debtor

Amina Maddox, Esq.
Deputy Attorney General
New Jersey Division of Law
25 Market Street
P.O. Box 119
Trenton, New Jersey  08625
Counsel for NJHEAA

Before the court for resolution is the debtor's adversary complaint seeking to discharge his student loans, claiming undue hardship under 11 U.S.C. § 523(a)(8). The defendant, New Jersey Higher Education Assistance

Authority, asserts sovereign immunity and makes a special appearance to contest the debtor's relief.  For the reasons expressed below, I conclude that the debtor has failed to carry his burden to justify a discharge of his student loans.

**FACTS AND PROCEDURAL HISTORY**

The debtor, John Joseph Bolton, attended Rutgers - The State University of New Jersey in the fall of 1989, graduating in May of 1993 with a degree in music.[1]  He did his student teaching at Lawnside Elementary and Middle School ("Lawnside") in New Jersey and was hired by them the following year as a music teacher.  He testified that he worked for Lawnside for approximately a year and a half until he was laid off when the music program was cut from the school budget.  At the time, he was also employed by various students to provide private piano lessons.

To help finance his education, Bolton received a Perkins loan from Rutgers in February 1989 and a Stafford loan from First Fidelity Bank, N.A. in

---

[1] Mr. Bolton had previously attended one semester at Rutgers sometime in the 1970s.

Document    Page 3 of 20

January 1993.[2]  The two loans were consolidated by Sallie Mae in February 1997.  At the time of consolidation, the outstanding balance on the Stafford loan was $7,871.23 and the balance on the Perkins loan was $805.16.[3]  The loan was guaranteed by the New Jersey Higher Education Assistance Authority ("NJHEAA").[4]  When the repayment period began on April 17, 1997, Bolton owed a principal balance of $8,685.26, to be paid back monthly over the next 144 months.  The new consolidated loan agreement required 24 monthly payments of $58.18 beginning on May 21, 1997, 119 monthly payments of $105.38 beginning on May 21, 1999, and one final monthly payment of $108.19 on April 21, 2009.[5]

The debtor claims that he made regular payments for several years, first on the separate student loans and then after consolidation, on the consolidated loan until 1998 or 1999.[6]  Thereafter, his payments became more sporadic,

---

[2]  Exh. D-2.

[3]  Id.

[4]  NJHEAA is also alternatively referred to as the New Jersey Higher Education Student Assistance Authority or NJHESAA.  Both references are hereinafter referred to as NJHEAA.

[5]  Exh. D-3.

[6]  The debtor's loan payment history for the time period prior to consolidation was not provided.

with the last one being made in February 2004. On January 30, 2004, the debtor was informed that his payment schedule had been changed and that he was now required to make three monthly payments of $85.19 beginning on February 21, 2004, 119 monthly payments of $155.03 beginning on May 21, 2004, with a final monthly payment of $147.03 on April 21, 2014.[7]

On March 19, 2004, Bolton filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On May 14, 2004, the debtor filed this adversary complaint seeking to discharge his liability for his student loans under the "undue hardship" provision of 11 U.S.C. § 523(a)(8). Sallie Mae filed a proof of claim on May 27, 2004, asserting an unsecured nonpriority claim in the amount of $13,131.74. On July 7, 2004, Sallie Mae assigned its claim to the NJHEAA.[8]

In support of his complaint, the debtor maintains that his poor health is the major factor affecting his ability to repay his student loans. He explained that prior to attending college, sometime in 1987, he was involved in an automobile accident that resulted in a spinal compression fracture and

---

[7]   Exh. D-4.

[8]   Exh. D-6.

herniated disc.[9]  He stated that he was "counseled to return to school" because of his resulting physical limitations.[10]  He testified that in 1991 through 1994, while he was in school, he began experiencing pain in his legs and that walking became more difficult.[11]  Two years after graduation, in 1995, he was involved in a second motor vehicle accident.  Then in September 2001, he suffered a heart attack and was diagnosed with diabetes and high blood pressure.  In November 2001, he was involved in a third automobile accident, suffering a herniated disc, carpal tunnel syndrome, and exacerbation of pre-existing injuries.[12]  The debtor continued to be employed as a private music teacher, but his physical health continued to gradually decline.

The debtor sought a determination of disability from the Social Security Administration ("SSA") as of November 15, 2001, citing as bases for his disability his heart condition, diabetes, and his spinal injuries.  On November 18, 2003, SSA declined to find him disabled as a result of his heart condition and diabetes.  They did determine, however, that he was disabled as

---

[9]   Id. at T5-15 to 16; T7-19.

[10]  Id. at T8-8 to 10.

[11]  Id. at T10-9 through 13; T12-16 through 18.

[12]  The debtor has a pending personal injury claim with respect to this last accident.

a result of his spinal injuries, and found him to be eligible for Social Security benefits, effective from March 11, 2002, with payments to begin September 2002.[13] The SSA stated:

> your vertebrae fracture and nerve damage [have] been found to have significantly limited your sitting and standing abilities; where your conditions have progressed to the point where they preclude your ability to sustain work activities, as of 3/11/02.[14]

Sometime in 2003, the debtor returned to school, taking some graduate courses at Rowan University in substance abuse counseling.[15] He ultimately decided that his lack of mobility would make it impossible for him to work in this field.[16]

For the June 16, 2005 hearing before this court, the debtor testified from a wheelchair. He explained that the wheelchair was prescribed by his doctor and that he used it because it was too far to walk from where he had parked.[17] He also explained that he could not sit for long periods of time and that he

---

[13]   Exh. P-1; P-2.

[14]   Exh. P-1.

[15]   T60-14 through 16 (6/16/05).

[16]   Id. at T61.

[17]   T13-17 through 24 (6/16/05).

could not bend without pain or lift any objects other than to assist in dressing himself.[18] The debtor testified that the "physical demands of teaching in a public school are just beyond [his ability]".[19] In his opinion, the demands of walking and standing as required in a standard school teaching position are just not possible for him.[20] He has continued to teach privately.[21] The debtor testified that he was "going to continue doing what I'm doing, teaching privately. I am not able to pursue what I was trained for as a teacher."[22] Over the last several years, he has also attempted several computer-based network marketing businesses without much success, and has continued to rely on teaching private piano lessons as his primary source of income to supplement Social Security payments.

Financially, the debtor paints a bleak picture. He is 49 years old, divorced and claims two dependent children ages 18 and 21. His 21 year old child is a college student, and comes home periodically. The debtor lives in a

---

[18]    Id. at T13-6 through 16.

[19]    Id. at T14-5 through 6.

[20]    Id. at T14-10 through 13.

[21]    Id. at T14-15 through 17.

[22]    Id. at T23-15 through 17.

house owned by his parents, and is not required to pay rent to live there.[23]

The debtor indicated in his petition a total monthly income of $1,053.00 at the time of his bankruptcy filing, which was comprised of $476.00 per month of business income (a combined net income from all sources including private music lessons) and $577.00 per month of social security disability income, which will be reduced to $523.00 per month because of a Medicare benefits deduction. He still receives $25 per week in child support payments, from the mother of his children, for his 18 year old son who just graduated from high school, although this was not reflected in his schedules.[24] The debtor's income tax returns indicate that he earned $2,325.00 from private teaching in 2001, $6,438.00 in 2002, $6,629.00 in 2003 and $6,920.00 in 2004.[25]

The debtor explained that currently, his prescriptions are paid through the county Medicaid program, and that most of his medical expenses are paid through Medicare. Starting in January 2006, he will no longer have the county

---

[23] T49-23 through 50-8 (6/16/05). The debtor testified that he used to pay $500.00 a month in rent, but he stopped paying rent sometime in 2001. Id. at T56-2 through 13.

[24] The debtor did not schedule the $25.00 a week in child support as income in his petition. He explained that his ex-wife had stopped making payments at the time of his filing and he had to go back to the probation department to receive the arrears. Id. at T20-7 through 17.

[25] Id. at T15-9 through 16-3; Exh. P-11,-12, -14.

prescription benefit and his monthly Social Security payment will be reduced to cover his drug benefit plan.[26]

## DISCUSSION

I.  Sovereign Immunity

The defendant NJHEAA asserts as its first affirmative defense that it is a governmental entity that cannot be sued in federal court without its consent. NJHEAA contends that it is entitled to sovereign immunity from suit pursuant to the Eleventh Amendment, that it is only making a special appearance here and that it does not consent to waive its right to sovereign immunity.

In Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 447, 124 S. Ct.1905, 1910, 158 L.Ed.2d 764 (2004), the United States Supreme Court concluded that "[t]he discharge of a debt by a bankruptcy court is . . . an in rem proceeding." "A bankruptcy court is able to provide the debtor a fresh start . . ., despite the lack of participation of all of his creditors, because the court's jurisdiction is premised on the debtor and his estate, and not on the

---

[26] Id. at T19-7 through 16.

creditors." Id. "Because the court's jurisdiction is premised on the res, . . . a nonparticipating creditor cannot be subjected to personal liability." Id. at 448, 124 S. Ct. at 1911. In this sense, "the exercise of [the bankruptcy court's] in rem jurisdiction to discharge a debt does not infringe state sovereignty." Id. The Court explained that "[a] debtor does not seek monetary damages or any affirmative relief from a State by seeking to discharge a debt; nor does he subject an unwilling State to a coercive judicial process. He seeks only a discharge of his debts." Id. at 450, 124 S. Ct. at 1912. Thus, the Court held that "the undue hardship determination [pursuant to 11 U.S.C. § 523(a)(8)] . . . is not a suit against a State for purposes of the Eleventh Amendment." Id. at 451, 124 S. Ct. at 1913.

The Hood decision resolves the sovereign immunity issue raised here. I conclude that the bankruptcy court's exercise of in rem jurisdiction here with respect to a determination of the dischargeability of the debtor's student loan debt does not infringe state sovereignty and is not barred by the Eleventh Amendment.[27]

---

[27] I need not reach the question of the jurisdictional impact of Sallie Mae's proof of claim that was filed prior to the assignment of the claim to NJHEAA.

II.    Undue Hardship

Section 523(a)(8) of the Bankruptcy Code provides that:

(a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

. . .

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8).  What is meant by "undue hardship" is not defined in the Code.

In In re Faish, 72 F.3d 298, 306 (3d Cir. 1995), the Third Circuit Court of Appeals adopted the Second Circuit's so-called Brunner undue hardship test in deciding whether a debtor should be granted a discharge of his student loans. In re Faish, 72 F.3d at 306.  In Brunner v. New York State Higher Educ. Servs., 831 F.2d 395, 396 (2d Cir. 1987), the Second Circuit developed a three-part test requiring the debtor to show:

-11-

> (1)  that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans;
>
> (2)  that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3)  that the debtor has made good faith efforts to repay the loans.

Each part of the test must be satisfied for the debtor to receive a discharge. If any one of the requirements is not met, dischargeability must be denied. In re Faish, 72 F.3d at 306. "Equitable concerns or other extraneous factors not contemplated by the Brunner framework may not be imported into the court's analysis to support a finding of dischargeability." Id. "The debtor has the burden of establishing each element of this test by a preponderance of the evidence." In re Brightful, 267 F.3d 324, 327 (3d Cir. 2001).

    A.    Minimal Standard of Living Inquiry

The first part of the Brunner test requires a determination "that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for [him]self and [his] dependents if forced to repay the loans." Faish, 72 F.3d at 304-05. Thus, the court must examine "'the debtor's current financial condition to see if payment of the loans would cause his

standard of living to fall below that minimally necessary.'" Id. at 305 (quoting In re Roberson, 999 F.2d 1132, 1135 (7th Cir. 1993)).  This first prong "requires more than a showing of tight finances." Id. at 306.

The debtor indicated on Schedule I of his petition a total monthly income of $1,053.00.  This number is comprised of $577.00 in income from social security and $476.00 in income from private teaching.  The debtor explained that the $476.00 was a net number from all sources, including private teaching.  The debtor also testified that his monthly social security income has been decreased to $523.00.

There is no question that an income of approximately $1,000.00 per month might readily support a finding of undue hardship for student loan discharge.  The debtor's testimony and the evidence offered in this case are somewhat inconsistent, however.  The debtor's income tax returns indicate a gradually increasing gross income from private teaching, going from $6,438.00 in 2002 to $6,629.00 in 2003 to $6,920.00 in 2004.  He testified that he teaches between 8 to 10 students per week, and receives income between $17.00 and $25.00 per lesson.

In addition, he receives occasional commission checks from various network marketing firms, including Doctor's Signature Sales and Marketing and Prepaid Legal Services,[28] in relatively small amounts. The debtor also acknowledged during the hearing that he had failed to include the $25.00 a week he was receiving in child support for his now 18 year-old son, although the record is not clear as to whether that payment will continue in light of the potential emancipated status of the child.

While a precise number is difficult to determine on this record, the debtor's testimony and the evidence presented indicates that the debtor's average monthly income may be somewhat higher than the amount he scheduled in his petition. Even so, the debtor's net monthly income is meager.

Regarding expenses, the debtor indicates in Schedule J of his petition monthly expenses in the amount of $1,081.00. Included within this amount is $216.00 for installment payments for an automobile. The debtor scheduled only one automobile, a 1993 Chrysler Town & Country van with a value of

---

[28] The debtor became the director of Prepaid Legal Services sometime in 2001. He was vague on the amount of money he receives but claimed that his checks were less than $150.00 and that he did not list it on his income tax return because his accounting service viewed it more as a hobby.

$2,719.00. He did not schedule a secured claim on this van in Schedule D. Nor did he schedule an executory contract or unexpired lease in Schedule G. He testified that he used $4,500.00 of a $7,000.00 check from the Social Security Administration, paid on account of retroactive disability benefits, to purchase a vehicle.[29] He used some of the remaining money to reinstate his automobile insurance.[30] There is no explanation for the monthly car payment in the record.

Without any adjustments in his expenses except the deduction of the car payment, the debtor has approximately $200 in disposable income. It must be recognized, however, that the expenses listed are extremely limited otherwise, with only $250.00 for food, $25.00 for clothing, and no provision for home maintenance, gasoline or car repairs.

With questions about the precise amount of income earned by the debtor, and the issue of monthly car payments not otherwise explained, it would be difficult on this record to conclude that the debtor has met his burden of proof to establish that he does not have the ability to maintain at

---

[29] T62-17 through 63-4 (6/16/05).

[30] Id. at T63-8 through 10.

least a minimal standard of living for himself while still being able to repay his student loans.  I need not resolve the issue, because I am convinced that the debtor has failed to meet the second prong of the Brunner test.

      B.      Whether Condition Will Likely Persist

The second part of the Brunner test requires "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans." Faish, 72 F.3d at 305.  This part of the test "'properly recognizes the potential continuing benefit of an education, and imputes to the meaning of "undue hardship" a requirement that the debtor show his dire financial condition is likely to exist for a significant portion of the repayment period.'" Id. (quoting In re Roberson, 999 F.2d at 1135)).  This means that the debtor must prove a total incapacity in the future to pay back his debts for reasons that are not within his control. Brightful, 267 F.3d at 328.  Consequently, the determination should be based on "'the certainty of hopelessness, not simply a present inability to fulfill financial commitment.'" Id. (quoting In re Brunner, 46 B.R. 752, 755 (S.D.N.Y. 1985)).

In this case, the debtor points to his classification as being disabled by

-16-

SSA and explains that in his opinion, his physical condition makes it very difficult for him to teach in a public classroom. The debtor described one teaching job interview several years ago, and his belief that he was not hired because of his inability to pick up boxes. He has substantial difficulty standing or sitting for long periods of time, but acknowledges that he now has the benefit of a wheelchair to assist him, which might be accommodated in certain educational facilities. The debtor "believes" that his disability would prevent his employment in a full-time capacity. He testified that he has significant musical knowledge and teaching experience, but he has not sought formal teaching employment for many years. As well, since he graduated from college in 1993, the debtor has attended some graduate classes, and he has been involved in several other business pursuits. These pursuits have apparently not been successful to date, but the debtor describes himself as "somebody who has exceptional desire to do something with their life, and because of that I force myself to do things that others may not necessarily do in my position."[31] He adds a cautionary note that he is "not capable of doing a whole lot more and I'm realistic about that fact."

I am certainly sympathetic toward the debtor's physical plight, and fully accept the fact that his physical impairments make it much more difficult for

---

[31] T40-18 to 20.

him to earn a greater income than he presently earns. However, I was impressed with the debtor's confidence in his musical and teaching abilities, and with his persistent attempts to engage in business opportunities on the internet and otherwise. I am concerned that he has not sought more permanent employment in any capacity for many years, notwithstanding his self-proclaimed talent and obvious entrepreneurial interest.

Under these circumstances, the record does not support the conclusion that the debtor has "a total incapacity . . . in the future to pay [his] debts for reasons not within his control (citations omitted)." Brightful, 267 F.3d at 328, does not demonstrate a "certainty of helplessness," Id., and does not demonstrate "extraordinary circumstances which would render it unlikely that the debtor ever would be able to honor his obligations." Id., 328-29. Because the record suggests that the debtor could potentially increase his income and improve his financial circumstances, I conclude that the debtor has failed to met his burden of proof as to the second Brunner element.

    C.    Good Faith Effort

The third and final prong of the Brunner test looks to whether or not the debtor has made a good faith effort to repay the loans. "[I]n applying this last

prong of the test, the courts have focused on whether debtors have waited a reasonable period of time after the loans become due before filing bankruptcy to attempt to discharge them." In re Mayer, 198 B.R. 116, 128 (Bankr. E.D. Pa. 1996). This is not a question of "simply whether or not a debtor has paid towards a student loan debt in the past, but emphasizes whether or not that debtor has maximized financial resources in order to prevent a default and has allowed sufficient time before declaring bankruptcy to obtain the job sought when the education in issue was being obtained." Id. at 127-28.

Good faith must be considered in light of the debtor's circumstances at that time. "In those instances in which the debtor cannot maintain a minimal standard of living even without payment of student loans, the demonstration of good faith does not necessarily command a history of payment. It does require a history of effort to achieve repayment, such as when a borrower diligently uses a deferment period to attempt the reorganization of [his] financial affairs." In re Maulin, 190 B.R. 153, 156 (Bankr. W.D.N.Y. 1995). See also In re Faish, 72 F.3d at 305 ("the debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control"); In re Derby, 199 B.R. 328, 330 (Bankr W.D. Pa. 1996).

Here, although we do not know the payment history between the debtor's graduation in May 1993 and his consolidation of the loans in April 1997, we

know that between April 1997 and May 2004, the debtor attempted to make payments, and obtained two periods of forbearance during this time period. I believe that the debtor has established the third element of the <u>Brunner</u> test.

Because the <u>Brunner</u> test requires that each of the three parts must be satisfied for the debtor to receive a discharge, I must conclude that the debtor has failed to establish his entitlement to an undue hardship discharge of his student loans under § 523(a)(8). The declaratory relief sought by the debtor in his complaint is denied.

Defendant's counsel shall submit an order in conformance with this opinion.


Dated:  October  6, 2005              _____
                                       JUDITH H. WIZMUR
                                       CHIEF U.S. BANKRUPTCY JUDGE